**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-CV-6628 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| RHO CHEMICAL COMPANY, INC., | ) | |
| ROBERT ROLIH, LORRAINE ROLIH, | ) | |
| GENERAL SURFACTANTS, INC., and | ) | |
| MILAN STAVINOHA, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff and Defendants have filed cross motions for summary judgment seeking Declaratory Judgment as to an exclusion provision's applicability to an insurance policy. For the following reasons, the Court grants Plaintiff's motion for summary judgment and denies Defendants' motions.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). The nonmoving party then must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. L.R. 56.1(b)(3)(B)). Indeed, "[w]hen a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the

rule, those facts are deemed admitted for purposes of the motion." *Id.* The nonmoving party

also must present a separate statement of additional facts, if any, that it contends require the

denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th

Cir. 2008) (citing N.D. Ill. L.R. 56.1(b)(3)(C)). These rules assist the courts by "organizing the

evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to

prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Br. of Trs.,*

233 F.3d 524, 527 (7th Cir. 2000) (citation omitted).

Local Rule 56.1"is designed, in part, to aid the district court, 'which does not have the

advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is

necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). In

general, the aim of Local Rule 56.1 statements and responses is to identify the relevant

admissible evidence supporting the material facts, not to make factual or legal arguments. *See*

*Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("[S]tatement of material facts also did . .

. not comply with Rule 56.1 as it failed to adequately cite the record and was filled with

irrelevant information, legal arguments, and conjecture."). The rule makes the summary

judgment process less burdensome on district courts by requiring the parties to nail down the

relevant facts and the way they propose to support or refute them. *Sojka v. Bovis Lend Lease,*

*Inc.,* 686 F.3d 394, 398 (7th Cir. 2012). Importantly, "district court[s] [are] entitled to expect

strict compliance with Local Rule 56.1." *Cichon v. Exelon Gen. Co., L.L.C.,* 401 F.3d 803, 809

(7th Cir. 2005) (citation omitted). A court, in its discretion, may choose to disregard statements

of fact and responses, in full or in part, that do not comply with Local Rule 56.1's requirements.

*See, e.g., Cracco,* 559 F.3d at 632; *Cichon,* 401 F.3d at 809-10; *Cady,* 467 F.3d at 1060;

*Bordelon,* 233 F.3d at 528. In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka*, 686 F.3d at 398.

Here, the Court has not considered statements of fact set forth by either side that fail to comply with Local Rule 56.1, and it has deemed as admitted those statements of fact to which the opposing party failed to properly respond. *See Cracco,* 559 F.3d at 632. Furthermore, the Court considered the facts asserted in the underlying complaints. *See Atlantic Cas. Ins. Co. v. Paszko Masonry, Inc.*, 718 F.3d 721, 723 (7th Cir. 2013) ("The facts alleged in a complaint against an insured, charging a tort or other wrong, are critical to determining the insurer's duty to defend."). With these principles in mind, the Court turns to the relevant facts.

## II. Relevant Facts.

### A. Jurisdiction and Venue

Essex Insurance Company ("Essex") is a Delaware Corporation with its principal place of business in Glen Allen, Virginia. (R. 61, Essex Stmnt. of Facts, at ¶1.) RHO Chemical Company, Inc. ("RHO") is an Illinois corporation with its principal place of business in Joliet, Illinois. (*Id*. at ¶2.) General Surfactants, Inc. ("GSI") is an Illinois Corporation with its principal place of business in Joliet, Illinois. (*Id*. at ¶6.) GSI is not a named insured and does not otherwise qualify as an insured under the insurance policy at issue. (*Id*. at ¶7.) Robert Rolih is the president of RHO, the president of GSI, and a citizen of Illinois. (*Id*. at ¶3.). Lorraine Rolih is Robert Rolih's wife and a citizen of Illinois. (*Id*. at ¶4.) RHO and the Rolihs are named insureds under Essex Insurance Policy No. 3DF8043 ("insurance policy"). (*Id*. at ¶5.) Milan Stavinoha ("Stavinoha") is a citizen of Illinois and the plaintiff in the underlying lawsuit filed on April 11, 2014 entitled *Milan Stavinoha v. RHO Chemical Company, Inc., General Surfactants,*

*Inc., Robert Rolih, and Lorraine Rolih*, No. 14 L 302.  (*Id*. at ¶8.)  The underlying case is

currently pending in the Circuit Court of the 12th Judicial Circuit in Will County, Illinois.  (*Id*.)

Both parties seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

"The Declaratory Judgment Act allows a party . . . who expects to eventually be sued, to

determine his rights and liabilities without waiting for his adversary, the presumptive plaintiff, to

bring suit.  That act, however, is not an independent grant of federal subject-matter

jurisdiction[.]"  *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009).  Here, the

Court has diversity jurisdiction over this action under 28 U.S.C. § 1332, because complete

diversity of citizenship exists between the parties and the amount in controversy exceeds

$75,000.00.  (R. 61 at ¶¶12-14.)  Venue is premised upon 28 U.S.C. §1391.  (*Id*. at ¶15.)  In

addition, all parties agree that Illinois law applies.  (*Id*. at ¶11.)

**B.      Underlying Lawsuit**

Stavinoha filed a lawsuit in state court against RHO, GSI, and the Rolihs, claiming he

suffered severe injuries on April 27, 2012, when portions of a building's roof fell out from under

him at 30 Industry Avenue, Joliet, Illinois.  (R. 9-4, Stavinoha Compl., at ¶4; R. 61 at ¶¶18-20.)

He alleges that RHO, GSI, and the Rolihs owned, controlled, maintained and operated the

building at the time of his injury.  (R. 9-4 at ¶1; R. 61 at ¶18.)  On the day of his injury,

Stavinoha was present at the Industry Avenue premises performing work on the roof pursuant to

his employment with P&P Roofing & Carpenters Construction ("P&P").  (R. 61 at ¶20.)

Specifically, Stavinoha asserts that he was a lawful invitee on the premises when he was injured,

and seeks to recover from Defendants for their negligence and associated unsafe working

conditions.  (R. 9-4 at ¶2-4.)

Defendants then filed a Third Party Complaint in the underlying action seeking contribution against P&P, whom they admitted was Stavinoha's employer. (R. 61 at ¶40.) In their Third Party Complaint, Defendants allege that P&P sent Stavinoha to repair the roof of a building on Industry Avenue pursuant to an oral agreement between P&P and the Rolihs. (*Id*.) Defendants conclude that Stavinoha was repairing the roof when the roof collapsed, causing him severe injuries, and maintain that P&P bears responsibility for Stavinoha's injuries as his employer. (*Id*.)

Further undisputed facts apart from the underlying complaints illustrate that Stavinoha was injured while repairing the building's roof under P&P's employment. First, on June 12, 2012, Stavinoha filed a claim for worker's compensation benefits with the Illinois Industrial Commission due to his April 27, 2012 injuries received in the course and scope of his P&P employment. (*Id*. at ¶21.) Since then, Stavinoha successfully received benefits pursuant to his claim against P&P. (*Id*. at ¶ 22.) Second, on or about April 25, 2014, Defendant Robert Rolih reported Stavinoha's underlying personal injury lawsuit to his insurance agency, admitting that "a roofer went up on the roof to repair it and fell thru [sic] the concrete panels." (*Id*. at ¶16.)

### C. Essex Insurance Policy And Exclusion Provision

At the time of Stavinoha's injuries, Essex insured RHO and the Rolihs. (*Id*. at ¶5.) Under Paragraph 1(a), the policy states:

> We [Essex] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(R. 23-1 at 9; R. 46, RHO Stmnt. Of Facts, at ¶9.)  The insurance policy also contains a

"Combination General Endorsement Form – MEGL 0001 05/10" that includes an exclusion for

bodily injury claims made by contractors and their employees.  Specifically, Paragraph 7

("exclusion provision") states:

> Unless stated elsewhere in this policy, the following exclusion applies only to
> injury, loss, or damages sustained in Illinois and/or New York State:
>
> This insurance does not apply to "bodily injury," "property damage," "personal
> and advertising injury," or any injury, loss, or damages, including consequential
> injury, loss or damage, arising out of, caused or contributed to by any injury
> sustained by any contractor, self-employed contractor, and/or subcontractor, or
> any "employee," "leased worker," casual worker, contract worker, "temporary
> worker," or "volunteer worker" of same.  This exclusion applies to any obligation
> to share damages with or repay someone else who must pay damages because of
> the injury, as well as liability assumed under any "insured contract."

(R. 23-1 at 38; R. 61 at ¶23.)  The term "contractor" does not appear in quotation marks to

designate it as having a special meaning in the insurance policy.  (R. 46 at ¶13.)  The crux of the

present lawsuit is whether Stavinoha and his injuries fall within this provision.  If not, Essex has

no duty to defend or indemnify RHO and the Rolihs in the underlying lawsuit.

### D.      Essex Reservation of Rights Letter

On June 13, 2014, Essex sent a Reservation of Rights letter to its insureds, RHO and the

Rolihs.  (R. 61 at ¶24.)  Essex informed them that it did not believe the contract provided

coverage for the underlying *Stavinoha* lawsuit, given the specific exclusion provision detailed

above.  (*Id*.)  The insurer agreed, however, to participate in RHO and the Rolih's defense against

Stavinoha's lawsuit pursuant to a full reservation of all rights.  (*Id*.)  Essex informed them that

"in agreeing to participate in the defense of RHO and the Rolihs or conducting any investigation

relating thereto, Essex is not waiving any of its rights to deny coverage or to refuse to defend or

continue defending RHO and the Rolihs at any future time." (R. 23-3 at 6; R. 61 at ¶24.) In

relevant part, Essex's Reservation of Rights letter informed RHO and the Rolihs that

> Essex does not believe that the reservation of rights creates a material coverage
> conflict of interest between it and RHO and the Rolihs in the provision of their
> defense against the *Stavinoha* Complaint. If there was a material coverage
> conflict of interest, RHO and the Rolihs would have the right to counsel of its
> choosing at the expense of Essex. However, the mere fact of a reservation of
> rights alone does not automatically give rise to a material coverage conflict
> requiring independent counsel.

(R. 23-3 at 7 (citing *Stoneridge Dev. v. Essex Ins. Company*, 888 N.E.2d 633 (Ill. App. 2nd Dist.

2008)); R. 61 at ¶25.)

Moreover, the Reservation of Rights letter explained why Essex did not believe a conflict

existed in the defense of RHO and the Rolihs, and invited them to contact Essex with any

disagreement or concerns. (R. 61 at ¶26.) The Reservation of Rights letter also denied that

Essex owed any coverage to GSI, because GSI was not an insured under the policy. (*Id*. at ¶27.)

Essex agreed, however, to provide a courtesy defense to GSI to allow defense counsel to

continue efforts to try to get GSI dismissed from the *Stavinoha* case. (*Id*.)

On May 19, 2014, Michael Holy of Leahy, Eisenberg & Fraenkel, Ltd., appointed by

Essex, entered his appearance on behalf of RHO, the Rolihs, and GSI in the underlying

*Stavinoha* lawsuit. (*Id*. at ¶28.) On June 30, 2014, Scott Hoster of Dystrup, Roster & Jarot, P.C.,

the personal attorney for RHO, the Rolihs, and GSI, filed his appearance in the underlying

matter. (*Id*. at ¶29.) At no time has Hoster advised Essex of any belief on his part that retaining

Holy as defense counsel was a conflict of interest. (*Id*. at ¶30.) Per the Will County Circuit

Court file, Attorney Hoster attended all case management conferences for the underlying

*Stavinoha* lawsuit, and no one has filed substantive motions. (*Id*. at ¶31.)

On November 11, 2014, James Marsh, coverage counsel of record for RHO, the Rolihs and GSI, sent a letter to Essex arguing that Essex's reservation of rights created a conflict of interest requiring independent defense counsel. (*Id*. at ¶34.) Later, on November 25, 2014, Essex wrote to Marsh noting that the November 11, 2014 letter was the first indication that a conflict of interest arising out of Essex's defense potentially injured RHO and the Rolihs. (*Id*. at ¶35.) Subsequently, Essex agreed to allow RHO and the Rolihs to control their own defense at Essex's expense without admitting that a material conflict of any kind existed. (*Id*.) On December 5, 2014, Marsh asked Holy, Essex's appointed defense counsel, to cover a court hearing on December 9, 2014 despite continuing to assert an actionable conflict of interest and continuing to use Hoster. (*Id*. at ¶36.)

On January 8, 2015, Marsh advised Essex that "Mr. and Mrs. Rolih, RHO Chemical, and General Surfactants have chosen Attorney William Kozol of the Joliet firm Rathbun, Cservenyak & Kozol to represent them as independent counsel in the underlying Will County lawsuit." (*Id*. at ¶37.) On January 22, 2015, Essex reported to Marsh that all parties, including the Rolihs and RHO, knew that Stavinoha, working for P&P, was performing roof repairs at the time of the injury. (*Id*. at ¶38.) Thus, asserted Essex, these known facts could not give rise to a material conflict of interest. (*Id*.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining

summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380,

127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden

of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477

U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for

summary judgment is made, the adverse party 'must set forth specific facts showing that there is

a genuine issue for trial.' " *Anderson*, 477 U.S. at 250 (quoting Fed R. Civ. P. 56(e)) (footnotes

omitted).

## ANALYSIS

On August 27, 2014, Essex timely sought Declaratory Judgment in this action and filed

its Amended Complaint for Declaratory Judgment on September 5, 2014. (R. 9.) On November

11, 2014, RHO and the Rolihs filed their Counter Complaint for Declaratory Judgment. (R. 23.)

Now, all parties have filed cross-motions for summary judgment. (R. 56; R. 60.) First,

Defendants assert that Essex has a duty to defend RHO and the Rolihs in the underlying lawsuit,

because the exclusion provision (1) is not clear and free from doubt and (2) is inapplicable to the

facts at issue. Second, Defendants argue in the alternative that Essex breached its duty of good

faith by failing to adequately warn RHO and the Rolihs of an actionable conflict of interest.

Essex, however, contends that it has no duty to defend or indemnify Defendants, because the

exclusion provision is (1) unambiguous and (2) applicable to the facts. Further, Essex argues

that there was no conflict of interest and Defendants did not suffer any prejudice. The Court

addresses each argument in turn.

I.      **Essex Insurance Policy's Exclusion Provision**

A.      **Illinois Insurance Contract Principles**

The parties agree that Illinois law governs the Court's interpretation of the insurance

policy at issue. "Under Illinois law, '[a]n insurance policy is a contract, and the general rules

governing the interpretation of other types of contracts also govern the interpretation of

insurance policies.' " *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015)

(quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 291 Ill. Dec. 269, 823 N.E.2d

561, 564 (2005)); *see also Geschke v. Air Force Ass'n,* 425 F.3d 337, 342 (7th Cir. 2005).

Illinois applies the four corners rule of contract interpretation, which bars consideration of

extrinsic evidence when the contract is facially unambiguous and fully integrated. *See TAS*

*Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 636 (7th Cir. 2007) (citing *Air*

*Safety, Inc. v. Teachers Realty Corp.,* 185 Ill. 2d 457, 236 Ill. Dec. 8, 706 N.E.2d 882, 885

(1999)); *see also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.,* 212

F.3d 373, 380 (7th Cir. 2000). "Like any contract under Illinois law, 'an insurance policy is

construed according to the plain and ordinary meaning of its unambiguous terms.' " *Schuchman*

*v. State Auto Property and Cas. Ins. Co.*, 733 F.3d 231, 235 (7th Cir. 2013) (quoting *Auto-*

*Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010) (citing *Nicor, Inc. v. Associated*

*Elec. & Gas*, 223 Ill. 2d 407, 307 Ill. Dec. 626, 860 N.E.2d 280, 286 (2006)). In sum, "the

primary function of the court is to ascertain and enforce the intentions of the parties as expressed

in the agreement." *Westfield Ins. Co*., 796 F.3d at 777-78 (quoting *Crum & Forster M'ngrs*

*Corp. v. Resolution Tr. Corp.*, 156 Ill. 2d 384, 189 Ill. Dec. 756, 620 N.E.2d 1073, 1078 (1993)).

Specifically, "an insurer has no duty to defend where 'there clearly was no coverage or

potential for coverage.' " *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (7th Cir. 2015) (quoting

*Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 687 (7th Cir. 2008) (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 293 Ill. Dec. 594, 828 N.E.2d 1092, 1098 (2005)); *see also id.* ("When an insurer denies a duty to defend based on an exclusionary clause, its application must be 'clear and free from doubt.' ") (quoting *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995)). "In assessing whether the duty [to defend] exists, a court must construe the allegations in the underlying complaint liberally and any doubt in coverage must be resolved in favor of the insured." *Native Am. Arts, Ins. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2015) (citing *Ill. State Med. Ins. v. Cichon*, 258 Ill. App. 3d 803, 196 Ill. Dec. 277, 629 N.E.2d 822, 826 (1994)). "Nonetheless, deference only goes so far; if the policy terms are unambiguous, the court must apply their plain and ordinary meaning." *Id.* (citing *Crum & Forster M'ngrs Corp.*, 156 Ill. 2d 384, 189 Ill. Dec. 756, 620 N.E.2d at 1078); *see also Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 843 (7th Cir. 2013) ("Where the provisions are clear and unambiguous, they must be given their plain, ordinary, and popular meaning, and the policy will be applied as written[.]") (quotations and citations omitted). Indeed, "if there is no ambiguity there is no need to look elsewhere." *Ace Am. Ins. Co. v. RC2 Corp., Inc.*, 600 F.3d 763, 767 (7th Cir. 2010) (quoting *Nicor, Inc.*, 223 Ill. 2d 407, 307 Ill. Dec. 626, 860 N.E.2d at 286). Importantly, "[i]n determining whether a provision of an insurance policy is ambiguous, Illinois courts examine whether it 'is subject to more than one reasonable interpretation, . . . not whether creative possibilities can be suggested.' " *Wehrle*, 719 F.3d at 843 (quoting *Bruder v. Country Mut. Ins. Co.*, 156 Ill. 2d 179, 189 Ill. Dec. 387, 620 N.E.2d 355, 362 (1993)). Indeed, " '[c]ourts will not strain to find ambiguity in an insurance policy where none exists.' " *Id.* (quoting *McKinney v. Allstate Ins. Co.*, 188 Ill. 2d 493, 243 Ill. Dec. 56, 722 N.E.2d 1125, 1127 (1999)).

### B.     The Essex Insurance Policy's Exclusion Provision Is Unambiguous

Defendants RHO and the Rolihs argue that "paragraph 7 of the combination General endorsement is vague and ambiguous." (R. 57 at 3.) Thus, Defendants conclude, the exclusion provision does not clearly exclude them from Essex's coverage.[1] Essex argues, however, that "the exclusion is not ambiguous or void." (R. 62 at 14.)

In relevant part, the exclusion provision provides that, "[t]his insurance does not apply to 'bodily injury' . . . 'personal and advertising injury,' or any injury . . . including consequential injury . . . arising out of, caused or contributed to by any injury sustained by any contractor, self-employed contractor, and/or subcontractor, or any 'employee,' 'leased worker,' casual worker, contract worker, 'temporary worker,' or 'volunteer worker' of same." (R. 23-1 at 38; R. 61 at ¶23.) This language is susceptible to one meaning: the insurance policy excludes from coverage certain injuries sustained, in relevant part, by contractors or their employees or volunteers. According to the insurance policy, this exclusion provision "applies only to injury, loss, or damages sustained in Illinois and/or New York." (R. 23-1 at 38; R. 61 at ¶23.) Although an Illinois state court has not yet construed this language, a New York state court has construed it. In *Essex Ins. Co. v. Mondone*, Mondone sought to "recover damages for personal injuries he allegedly sustained while working as an electrical contractor at a residential property" where Essex's insureds were also contractors. 106 A.D.3d 1045, 1046, 965 N.Y.S.2d 616 (2013). The operative Essex insurance policy contained the same "section VII" exclusion provision seen here. *Id*. Significantly, the New York state court concluded that "[t]he plain language of the exclusion applies to exclude coverage here." *Id*. at 1047. As a result, Essex was "not obligated

---

[1] Defendant Stavinoha filed a response to Essex's motion for summary judgment in which he makes insurance policy arguments similar to RHO and the Rolihs (R. 65), but the Court focuses on the latter's insurance policy arguments, because "the tort plaintiff [in the underlying suit] has no authority to interpret the insurance contract." *Atlantic Cas. Ins. Co.*, 718 F.3d at 723.

to defend or indemnify [its insureds] in the underlying action[.]" *Id.* The Court agrees with the New York court.[2]

RHO and the Rolihs argue otherwise. Specifically, they contend that in order for the exclusion provision to apply, Stavinoha's injury must have "caused or contributed to another injury, or caused another injury to 'arise out of' his injury." (R. 57 at 3.) Put differently, Defendants argue that two separate injuries are required to trigger the exclusion provision. This argument amounts to nothing more than a "creative possibilit[y]." *Wehrle*, 719 F.3d at 843. Under Defendants' interpretation, the exclusion provision would only exclude from coverage injuries arising out of another person's "bodily injury." This is nonsensical. While the provision may exhibit a bit of poor draftsmanship, a "reasonable construction" of the provision would hold that its last reference to "injury" simply serves as an aggregate term referring back to the specific kinds of injuries listed earlier in the provision. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 811 (7th Cir. 2010) (Referring to the "paramount rule of reasonable construction which guides all contract interpretations"). The plain language of the provision is unambiguous. Thus, the insurance policy excludes from coverage any of the specific injuries listed in the provision when sustained by a contractor or her employee or volunteer.

Further, Defendants argue that the insurance policy does not define the term "contractor," rendering the exclusion provision determinatively ambiguous. Specifically, RHO and the Rolihs contend that because the policy does not define the term "contractor," the Court must not engage in "guess work" and should interpret the term liberally in favor of coverage. (R. 57 at 4.) Defining "contractor," however, requires no such guessing. "[A]mbiguous terms are construed

---

[2] Essex relies on several cases where courts construed insurance provisions that were different, albeit similar, from Paragraph 7. (R. 62 at 7-8.) The Essex provision in *Mondone*, however, matches the provision here. 106 A.D.3d 1045, 965 N.Y.S.2d 616.

against the drafter but, in construing a policy, 'governing legal authority must, of course, be taken into account as well, for a policy term may be considered unambiguous where it has acquired an established legal meaning.' " *Ace Am. Ins. Co.*, 600 F.3d at 766 (quoting *Nicor, Inc.*, 223 Ill. 2d 407, 307 Ill. Dec. 626, 860 N.E.2d at 286). The "plain and ordinary" meaning of the word "contractor" is "one that contracts to perform work or provide supplies." *Contractor Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/contractor (last visited Nov. 3, 2015); *see also Schuchman*, 733 F.3d at 235 (Instructing courts to construe insurance policies according to the "plain and ordinary meaning" of their unambiguous terms). Indeed, governing Illinois law has historically held the same, stating that "[t]he term 'contractor' is of obvious definition. It describes a party who enters into a contract with the owner of a certain property to perform some type of work thereon." *Richard v. Ill. Bell Tel. Co.*, 66 Ill. App. 3d 825, 23 Ill. Dec. 215, 383 N.E.2d 1242, 1260 (1978). Thus, despite not defining "contractor," the exclusion provision remains unambiguous and survives Defendants' challenge.

### C.     The Essex Insurance Policy's Exclusion Provision is Applicable

Next, Defendants assert that the exclusion provision's "application to the facts presented here is not clear and free from doubt, as required by Illinois law." (R. 57 at 2.) Even reviewing the facts in the light most favorable to Defendants, this argument fails.

First, Defendants contend that the second sentence in the exclusion provision renders the exclusion as a whole inapplicable to the current facts. Specifically, that sentence states: "[t]his exclusion applies to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any 'insured contract.' " (R. 61 at ¶23.) Defendants maintain that "there is nothing in this second sentence of paragraph 7 to indicate that it does not serve to limit the applicability of the first sentence of paragraph 7." (R.

57 at 4.)  Under a plain reading, there is nothing in the second sentence, however, indicating that it *does* serve to limit the first sentence's applicability.  Thus, even if it is true that "[n]owhere in the underlying lawsuit it is [sic] alleged that Rho Chemical or the Rolihs have an obligation to share damages with or repay someone else who must pay damages because of the injury alleged by Stavinoha," the exclusion provision's first part, independent from what follows, still applies to the facts at issue.  (*Id*.)

Second, Defendants argue that Stavinoha and P&P were not contractors and, as a result, do not fall within the exclusion provision's framework.  Specifically, Defendants assert that "there was no contract entered into between Rho Chemical and Stavinoha."  (R. 57 at 5.) Defendants' own actions, however, preclude their argument.  On February 26, 2015, Defendants' independent counsel filed a Third Party Complaint in the underlying lawsuit.  The undisputed facts illustrate that Defendants admitted the following: "On and prior to April 27, 2012, P&P entered into an oral agreement with the Defendants [Rolih] to perform repairs to a roof of a building located on Industry Avenue in Joliet, Illinois."  (R. 61 at ¶40.)  Defendants further asserted that on the April 27, 2012 injury date, Stavinoha "was employed by P&P and was working on a roof of a building located on Industry Avenue in Joliet, Illinois."  (*Id*.)  Under Illinois law, oral agreements can form legally binding contracts.  *See Central Ill. Light Co. v. Consolidation Coal Co.*, 349 F.3d 488, 491-92 (7th Cir. 2003) (citing *Quake Construction, Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 152 Ill. Dec. 308, 565 N.E.2d 990, 993-94 (1990)).  Here, an oral agreement with no written contract between Defendants and P&P does not automatically prevent P&P from operating as a "contractor."  Indeed, taking these undisputed—or improperly disputed—facts as true, there is no genuine issue of fact that P&P was a contractor under the provision's plain and ordinary meaning, making Stavinoha a contractor's employee.  *See United*

*States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466

(7th Cir. 2005) ("Summary judgment would be meaningless if litigants could manufacture

genuine issues of material fact through . . . 'admissions' materially different from positions taken

in the past."). Thus, the exclusion provision remains applicable.

As a result, the insurance policy's exclusion provision is both unambiguous and

applicable to the facts at issue. As such, Essex does not have a duty to defend or indemnify

Defendants RHO and the Rolihs.

## II.     Conflict of Interest

Finally, Defendants argue that Essex breached its duty of good faith by failing to warn

Defendants of an actionable conflict of interest. (R. 57 at 8.) In response, Essex contends that

there was no conflict of interest and that, regardless, Defendants were not prejudiced. (R. 62 at

11.)

"Under Illinois law, . . . when an insurer believes that a policy does not provide coverage,

it can provide a defense under a reservation of rights or obtain a declaratory judgment as to its

rights and obligations." *Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 452 (7th Cir.

2000); *see also Am. Safety Cas. Ins. Co. v. City of Waukegan, Ill.*, 678 F.3d 475, 485 (7th Cir.

2012) ("Illinois requires an insurer that denies coverage either to defend under a reservation of

rights or to seek a declaratory judgment of non-coverage[.]"). Regarding its reservation of

rights, "an insurer is not required to assert all of its defenses to liability in a letter to its insured."

*Tobi Eng'g, Inc. v. Nationwide Mut. Ins. Co.*, 214 Ill. App. 3d 692, 158 Ill. Dec. 366, 574 N.E.2d

160, 162 (1991). Of course, a "bare notice of a reservation of rights is insufficient unless it

makes specific reference to the policy defense which may ultimately be asserted and to the

potential conflict of interest." *Cowan v. Ins. Co. of North Am.*, 22 Ill. App. 3d 883, 318 N.E.2d

315, 326 (1974); *see generally Nautilus Ins. Co. v. Dubin & Assocs., Inc.*, No, 11 C 1251, 2012 WL 2458607, at *4 (N.D. Ill. June 27, 2012). "In order to determine if a conflict exists, the court 'must compare the allegations of the underlying complaint against the insured to the terms of the insurance policy at issue.' " *National Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 875 (7th Cir. 2009) (quoting *Am. Family Mut. Ins. Co. v. W. H. McNaughton Builders, Inc.*, 363 Ill. App. 3d 505, 300 Ill. Dec. 234, 843 N.E.2d 492, 498 (2006)). Specifically, "[i]f, after comparing the complaint against the insured to the insurance policy, it appears that factual issues will be resolved in the underlying suit that would allow insurer-retained counsel to lay the groundwork for a later denial of coverage, then there is a conflict between the interests of the insurer and those of the insured." *Id.* (quotations and citations omitted).

Regarding the alleged conflict of interest, the factual issues in the underlying suit had the potential to allow Essex's retained counsel to "lay the groundwork" for the current denial of coverage. *Id.* Specifically, one of the determinative issues in the underlying complaint against Defendants is whether P&P is a contractor and Stavinoha, a contractor's employee. As these legal characterizations dictate who may bear responsibility for the alleged negligence below, it is possible the associated underlying factual determinations are related enough to Essex's exclusion provision—also hinged on "contractor" status—to cause a conflict of interest.

Defendants forget, however, that "[p]rejudice resulting from a conflict of interest . . . will not be presumed and the burden of establishing it rests with the insured and must be proved by clear, concise, and unequivocal evidence." *Nautilus Ins. Co.*, 2012 WL 2458607, at *7 (citing *Royal Ins. Co. v. Process Design Assocs., Inc.*, 221 Ill. App. 3d 966, 164 Ill. Dec. 290, 582 N.E.2d 1234, 1240 (1991)). Nowhere in the statement of facts do Defendants offer clear, corroborated evidence that they were prejudiced by the potential conflict of interest at issue.

Specifically, Defendants' conflict of interest arguments are directly contradicted by Essex's Reservation of Rights letter. Defendants do not contest that Essex sent the Reservation of Rights letter nor that Defendants received it. First, Defendants contend that "Essex affirmatively denied the existence of a conflict of interest between it and its insureds." (R. 57 at 8.) Essex's Reservation of Rights letter, however, specifically stated, "[i]n our view, the only coverage issue in this case would be one of law as to whether [sic] paragraph 7 exclusion in the MEGL-0001 Endorsement, when compared against the allegations of the underlying complaint, would be deemed by a court to exclude coverage. In our view, this reservation does not create a material conflict[.]" (R. 23-3 at 7.) Essex explicitly referenced both the "policy defense which may ultimately be asserted" and "the potential conflict of interest." *Cowan*, 22 Ill. App. 3d 883, 318 N.E.2d at 326. Afterward, Essex simply opined that a "material" conflict did not exist. Indeed, Essex asked Defendants to call with any questions or disagreements specifically regarding any potential material conflicts of interest. (R. 61 at ¶26; R. 23-3 at 7.) It is uncontested that Defendants did not raise any such conflicts until almost five months after Essex sent the Reservation of Rights letter. Indeed, Defendants' attorney, Scott Hoster, did not object to Essex's appointed counsel. Second, Defendants argue that "Essex did not decline to defend and offer to allow its insureds to control their own defense at Essex's expense." (R. 57 at 8.) Again, Essex's Reservation of Rights letter tells a different story. In it, Essex wrote, "[i]f there was a material coverage conflict of interest, RHO and the Rolihs would have the right to counsel of its choosing at the expense of Essex." (R. 23-3 at 7; R. 61 at ¶25.) Furthermore, when Jordan Marsh told Essex for the first time in a November 11, 2014 letter that Essex's Reservation of Rights letter created a conflict of interest, Essex permitted RHO and the Rolihs to hire their own

defense counsel at Essex's expense.  As a result, Defendants have failed to identify any prejudice.

Thus, Essex fulfilled both steps required of it after determining it had no duty to defend Defendants: it proceeded to defend them under a reservation of rights, and it sought a declaratory judgment.  Although taking these steps does not mean "estoppel can never lie," Essex successfully informed Defendants of any potential conflicts with regard to the exclusion provision at issue and ultimately permitted Defendants to hire their own counsel at Essex's expense once Defendants raised a conflict of interest.  *Willis Corroon Corp.*, 203 F.3d at 452. Moreover, Defendants have failed to raise any issue of material fact regarding their burden of demonstrating prejudice from said conflicts.  As a result, Essex is not estopped from asserting the unambiguous, applicable policy exclusion described in detail above.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment and denies Defendants' motion for summary judgment.


**DATED:  November 3, 2015**                              **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge